UNTIED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THOMAS NEMETH, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | Case No._____ |
| v. | CLASS ACTION COMPLAINT |
| FUTURE MOTION INC., | DEMAND FOR JURY TRIAL |
| *Defendants*. | |

Plaintiff Thomas Nemeth ("Plaintiff" or "Plaintiff Nemeth"), on behalf of himself and the class of all others similarly situated as defined below, for his complaint against Defendant Future Motion Inc. ("Defendant" or "Defendant Future Motion"), alleges as follows:

## INTRODUCTION

1. OneWheel originally launched as a Kickstarter project (Kickstarter is a website platform that allows independent artists or designers to crowdfund projects) on January 6, 2014; it was fully funded by January 24, 2014, and began shipping units to initial backers on November 21, 2014.[1]

2. OneWheel sells several versions of their product including the OneWheel +, GT, Pint and Pint X.

3. Generally, a Onewheel model is comprised of a motor, battery, footpad sensor and wheel, and has electronic components which allow it to self-balance.

---

[1] https://www.kickstarter.com/projects/4422853/onewheel-the-self-balancing-electric-skateboard/posts

1

4. This case arises from the use and subsequent injury due to a known nose-dive defect with the OneWheel device.

## PARTIES

5. Plaintiff, Thomas Nemeth is an adult resident citizen of Westland, Michigan.

6. Defendant Future Motion Inc. is a California corporation with its principal place of business at 1201 Shaffer Rd, Suite A, Santa Cruz, California, 95060-5763, United States.

7. <u>Subject Matter Jurisdiction</u>. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value or $75,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 potential class members.

8. <u>Personal Jurisdiction.</u> The Court has personal jurisdiction over Future Motion because Future Motion regularly conducts business in Michigan and because Future Motion has falsely advertised the product to consumers who reside in Michigan, including consumers who reside in the Eastern District of Michigan. Future Motion has also sold its products in the state of Michigan, including the Eastern District of Michigan. In addition, Future Motion committed tortious acts in Michigan including the Eastern District of Michigan, and Plaintiff's claims arise out of such acts, and/or because Future Motion has otherwise made or established contacts in Michigan, including the Eastern District of Michigan, sufficient to permit the exercise of personal jurisdiction.

9. <u>Venue.</u> Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(d) and (c) and 18 U.S.C. § 1965, because Future Motion is subject to personal jurisdiction in this judicial district and because a substantial part of the events giving rise to the claims in this action

occurred in this judicial district. Specifically, Future Motion has a substantial online advertisement presence in the state to promote its products which reach millions of consumers who reside in the United States, including the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

10. Future Motion's "Onewheel" product is a self-balancing, battery powered, one-wheeled transportation device that is often described as an electric skateboard. The product was and is designed, developed, tested, manufactured, inspected, produced, distributed, marketed, and sold by Defendant Future Motion. Upon information and belief, Future Motion developed and designed the subsystems that power the OneWheel+, including motors, power electronics, battery modules, and smartphone applications ("apps").

11. Operation of Future Motion's Onewheel+ is controlled and/or monitored, in part, by an "app" installed on users' smartphones. The Onewheel app allows users to view their total miles, battery life, speed, and other information.

12. Future Motion promotes the Onewheel products as a "toy" that anyone from age 14 to 86 (their oldest known rider) can enjoy. On its website, Future Motion repeatedly claims that the Onewheel products are safe and require no maintenance to operate. Videos on Onewheel's website depict the Onewheel device being operated in concrete drainage basins, through standing water, on an open highway (with cars approaching), across dirt paths, on the beach, through wooded areas, across fallen logs, and on and off the sidewalk.

13. A "FAQ" on Future Motion's website asks, "Are Onewheels difficult to ride?" Posted response: "Nope! Anyone can ride Onewheel with a little instruction and practice. Onewheel is packed with technology that actively helps to keep you balance . . . . Tens of thousands of people of all ages and skill levels have learned to ride and we know you can

do it too. Don't believe us? Watch us demo a stranger or check out 86 year old, Shreddin Eddie."[2] The phrase "Shreddin Eddie" is a link to a YouTube video featuring a group of senior citizens (some in wheelchairs) cheering on an elderly gentlemen on a Onewheel, with a younger person prompting him with, "it's a little easier than you thought, huh?"[3] Another FAQ asks, "What's the maximum age to ride Onewheel?" Posted response: "There is none! We have riders of all ages and it is never too late to start riding a Onewheel. Don't believe us? Check out 86 year old, Shreddin Eddie." And another FAQ asks, "Do Onewheels need regular maintenance?" Posted response: "Nope! They're built like tanks."[4]

14. A Onewheel is mounted much like a traditional skateboard. Once the board turns on and the rider brings it to level, the motor engages and starts balancing the rider. To go forward, a rider leans forward, and to slow down or stop, a rider leans backward. To turn the rider simply puts pressure on his toes or heels to turn the board in the chosen direction.

15. One major limitation of Onewheel products is that they require power to keep the rider balanced. A sudden loss of power causes the balancing functionality to cease, causing the device to nosedive and throw the rider forward.

16. The Onewheel will provide the rider with "pushback" when approaching the device's limits during use. When the device reaches a "pushback situation, the nose of the board [the front footpad] will lift to slow the rider down."[5] Often, however, instead of or in addition to pushback, which is allegedly designed as a warning to riders to avoid a dangerous situation, the Onewheel will simply shut off and nosedive, resulting in the rider being thrown from the device. The harder the device works to maintain operations, the less

---

[2] https://onewheel.com/pages/faq
[3] https://www.youtube.com/watch?t=75&v=5EGcl-27buw&feature=youtu.be
[4] https://onewheel.com/pages/faq
[5] https://onewheel.com/pages/push-back

the Onewheel can assist the rider in balancing. Different factors impact when and what will cause the Onewheel to shut down and nosedive, including the rider's weight, tire pressure, wind direction, battery level, rider stance, and the grade of incline or decline. It is impossible to predict exactly when a nosedive will occur or what will cause it to occur.

17. The primary cause of "pushback" nosediving is velocity. When experiencing velocity pushback, the rider will feel the nose of the Onewheel rise to various degrees when a certain velocity is reached. Often, velocity pushback occurs at a speed lower than that of the maximum due to external factors.

18. Pushback and nosedives also occur on inclines and declines, purportedly to alert the rider that the motor is on the verge of becoming overworked. The problem with this form of pushback, however, is that it is difficult for the rider to discern whether the rider is feeling pushback or whether it is the natural resistance caused by the incline/decline.

19. While ascending hills riders are already pressing against the nose and the grade of the hill to ascend, and therefore may not discern pushback. While descending, a rider may not feel pushback because his or her weight is likely already on the tail to control speed. Pushback in such situations will likely result in a sudden nosedive or tailspin, especially if the rider is unaware that the Onewheel is giving them pushback. Again, the result will be that the rider feels the Onewheel suddenly shut down during operation.

20. Another form of pushback occurs when the Onewheel is nearing battery depletion. This pushback purportedly alerts riders by elevating the nose dramatically. When the Onewheel purportedly senses that the batteries are about to be damaged by over-depletion, the Onewheel will shut off entirely, leaving the rider to recalibrate his or her balance suddenly and unexpectedly, often resulting in the rider being thrown from the Onewheel.

21. Yet another form of pushback is referred to as regeneration pushback. One way that the Onewheel recharges its battery to collect kinetic energy when going down a decline and to reserve this power in the battery. However, this may result in the battery becoming overcharged which will damage the battery. Future Motion purportedly "addressed" this problem by designing the Onewheel to suddenly and unexpectedly shut down to prevent battery damage—at the expense of rider safety. Instead of allowing the battery to overcharge, prior to regeneration-related damage to the battery, the Onewheel will shut down. The same problems in discerning pushback while ascending/descending also occur in this situation.

22. Another common cause of nosedives is acceleration. If a rider attempts to accelerate quickly, the motor may not support the sudden weight and force on it and the nose will suddenly drop. Yet, Future Motion advertises the Onewheel's ability to accelerate quickly, even from a complete stop. Such acceleration nosedives can happen at any speed, even from a dead stop, and the rider will feel as though the motor has suddenly shut off. "Tail-slides" can also occur when the rider shifts his or her weight onto the back of the Onewheel and thereby overwhelms the motor. In that case, the tail of the Onewheel will suddenly drop and slide on the ground, causing the rider to become instantly unbalanced.

23. The rider can easily override pushback in all situations by continuing to lean forward and accelerate.[6] Often, when the rider does not perceive the pushback sensation, this override is done unintentionally. In many cases, the lift of the pushback may not be noticeable to the rider or might be indistinguishable from the sensation of pressing forward to accelerate or travel uphill or downhill.

---

[6] https://onewheel.com/pages/push-back

24. When pushback override occurs, the motor of the Onewheel shuts off, causing the front footpad (the "nose") of the device to violently slam into the ground, propelling the rider forward and causing severe injury.

25. Not only is it prohibitively difficult to determine when nosedives, tailspins, or shut-offs will occur, but the result of such unexpected and undiscernible events almost invariably cause the rider to be ejected or fall from the Onewheel, often resulting in significant injuries. A Onewheel nosedive or shut-off is not a mild event as it might be with any other type of vehicle. The front of the Onewheel violently slams into the ground and the rider is thrown forward, all without warning.

26. On November 16, 2022, the Consumer Product Safety Commission issued a warning regarding Onewheel, stating that a CPSC evaluation found the product could cause the rider to be ejected.[7]

27. The report also noted that at least four deaths had been reported between 2019 and 2021, as well as multiple other injuries including upper-body fractures and ligament damage.

28. For years after reports of injuries and deaths began to surface Future Motion Inc made representations designed to mislead consumers into believing that their machines were safe for use and refused to issue a recall.

29. Defendant only agreed to issue a recall of the product late into September of 2023, almost a full year after the initial CPSC warning.

30. The recall notice reads: "The skateboards can stop balancing the rider if the boards' limits are exceeded, posing a crash hazard that can result in serious injury or death."[8]

---

[7] https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Warns-Consumers-to-Stop-Using-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Ejection-Hazard-At-Least-Four-Deaths-and-Multiple-Injuries-Reported
[8] https://www.cpsc.gov/Recalls/2023/Future-Motion-Recalls-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Crash-Hazard-Four-Deaths-Reported

31. The recall remedy suggests that consumers should download a firmware update for their Onewheel to include Haptic Buzz alert functionality, a warning system that alerts the rider when the board nears its limits, runs low on power or enters an error state.

32. Plaintiff Thomas Nemeth purchased his Onewheel on August 14, 2023; having seen marketing for the product for many years prior.

33. Plaintiff first took his Onewheel for a drive on September 28, 2023.

34. As soon as the board left the driveway it suddenly, and without warning stopped, causing the front facing side to collapse onto the pavement and propel Plaintiff forwards.

35. Plaintiff collided with the pavement and broke his collar bone.

36. Plaintiff received surgery on October 3, 2023 and now has a permanent plate in his collarbone.

## CLASS ALLEGATIONS

37. Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated as the following ascertainable Class defined as:

    "All individuals residing within the United States who purchased a Onewheel skateboard device with a balancing defect prior to the September 29, 2023 recall."

38. The definition of the class is unambiguous. Plaintiff is a member of the class that he seeks to represent. Class members can be notified of the class action through publication and direct mailing to address lists maintained in the usual course of business by Defendant and retail customers.

39. Class members are so numerous that individual joined is impracticable. As of September 1, 2023 there were 31 federal Onewheel related actions pending in 15 different district

courts. While the precise number of Class members is unknown to Plaintiff, it is clear that the number exceeds that which would make joinder possible or feasible, particularly given Defendants' recall of Onewheel skateboards.

40. Common questions of law and fact predominate over the questions affecting only individual Class members. Some of the common legal and factual questions include but are not limited to:

    a. Whether Defendant was aware that the Onewheel skateboard product presented an unreasonable risk due to the design defect;

    b. Whether Defendants representations and omissions, created and then breached an implied warranty.

    c. Whether Defendant violated consumer protection statutes and/or false advertising statues and/or deceptive business practices statutes;

    d. Whether Defendant was under a duty to, and then failed to adequately warn consumers of the defect;

    e. Whether Defendant committed misrepresentations in their marketing of the product;

    f. The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class members.

41. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any are fewer than the numerous common questions that predominate.

42. The injuries sustained by the Class members flow, in each instances, from a common nucleus of operative fact, Defendants misconduct. In each case Defendant negligently manufactured, marketed and sold the recalled product while advertising that their product was safe.

43. The Class members have been damaged by Defendants' misconduct. The Class members paid market value prices for the Onewheel skateboards.

44. Plaintiff's claims are typical of the claims of the other Class members. Plaintiff bought a Onewheel skateboard, prior to the recall, that Defendants manufactured, marketed and sold as safe.

45. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the bases of the Class members' claims. Plaintiff's interests do not conflict with the interests of the other Class members that they seek to represent. Plaintiff has retained counsel competent and experienced in Class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection Class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class members.

46. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class members. The relief sought per individual member of the class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

47. Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The Class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the absence of material differences in the state statutes and common laws upon which the Class members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

## COUNT I – NEGLIGENT DESIGN

48. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

49. At all times herein mentioned Defendant was designer, researcher, manufacturer, tester, advertiser, promotor, seller and distributor of Onewheel as described above when used by Plaintiff.

50. Onewheel when used by Plaintiff was received by him in the same form as it was when it left Defendant's control.

51. At all times, Plaintiff used Onewheel consistent with the instructions on use and did not alter or misuse it.

52. Defendant breached its duties by committing or omitting the following:
    a. Failing to properly manufacture its Onewheel skateboards, and
    b. Failing to properly test its Onewheel skateboards.

53. The product was not reasonably safe when it left the control of Defendant.

54. By September 22, 2023, Defendant was aware of the unreasonable risk Onewheel presented regarding the nosedive defect and recognized as much by issuing a recall the following day.

55. When the product left the control of Defendant, a technically feasible alternative production practice, the inclusion of a haptic buzz alert functionality was available that would have prevented the harm without significantly impairing the usefulness of desirability of the product to users and without creating equal or greater risk of harm to others.

56. These breaches of duty proximately caused the Plaintiff Nemeth and the putative class to lose the value of the funds spent on Defendant's defective product

### COUNT II – BREACH OF IMPLIED AND EXPRESS WARRANTIES

57. Plaintiffs realleges and reincorporates the preceding paragraphs as if fully restated herein.

58. Defendant put Onewheel in the stream of commerce with the intent and knowledge that it would reach consumers such as Plaintiff.

59. Defendant marketed its product as safe, effective and easy to use for the average consumer.

60. Defendant's product was not safe for the average consumer and posed an unreasonable risk of causing injury when used in its intended manner.

61. Plaintiff relied on Defendant's express warranties of safety when purchasing and utilizing Onewheel.

62. Plaintiff utilized Onewheel in the manner intended by Defendant and was injured as a result.

63. As a proximate result of the breach of implied warranty by Defendant Manufacturer, Plaintiff Nemeth was injured as listed above.

### COUNT III – NEGLIGENT DESIGN - FAILURE TO WARN

64. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

65. At all times that Plaintiff purchased and used Onewheel, Defendant was aware of its nose dive defect.

66. Defendant's product was marketed for sale to common consumers around the home, such as Plaintiff.

67. Defendant failed to provide any warnings of the nosedive defect.

68. Instead, Defendant advertised its product as safe and effective.

69. Defendant refused to recall the product even after reports of the nosedive defect became known to it.

70. Defendant's product was not safe.

71. As a result of Defendant's failure to warn Plaintiff of the defect with its product; Plaintiff along with all putative class members lost the value of the funds paid to Defendant for their defective product.

## **DAMAGES**

WHEREFORE, Plaintiff demands judgment against Defendant together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

1. Economic Loss
2. Reasonable attorney's fees;
3. The costs of these proceedings;
4. Such other and further relief as this Court deems just and proper.

Respectfully Submitted;

Date: November 1, 2023

/s/ Alyson Oliver
Oliver Law Group PC
50 W. Big Beaver Road, Suite 200
Troy, MI 48084

Phone: (248) 327-6556
Fax: (248) 436-3885
notifications@oliverlawgroup.com